## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ALVIN J. BENNETT | : | |
| | : | |
|    Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
|    v. | : | _____ |
| | : | |
| | : | |
| COMPUTER MAINSTREAM | : | |
| CORPORATION and | : | |
| CITY OF ATLANTA | : | |
| | : | |
|    Defendants. | : | |
| _____ | : | |

## COMPLAINT

Alvin J. Bennett files his Complaint against Defendants

Computer Mainstream Corporation. ("CMC") and the City of Atlanta

(the "City") (collectively "Defendants").

## NATURE OF THE ACTION

### 1.

This is an action for discrimination, retaliation, and failure to

accommodate under the Americans with Disabilities Act of 1990, as

amended, 42 U.S.C. §§'s 12101 et. seq, (ADA), the Rehabilitation Act of

1973, as amended, 29 U.S.C. §§'s 701 et. seq, (ADA) and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA").

## PARTIES

2.

Plaintiff Alvin J. Bennett is a U.S. citizen and resident of DeKalb County in the State of Georgia.

3.

Defendant Computer Mainstream Corporation is a corporation organized under the laws of Georgia, with its principal place of business at: 2849 Paces Ferry Rd., Suite 250, Atlanta, Georgia, 30339. It is subject to an action under the ADA and FMLA and can be served with summons and complaint upon its Registered Agent, Sandra Adams at the principal office address.

4.

Defendant City of Atlanta is a municipality under Georgia law, with its principal officers at City Hall, 55 Trinity Street, S.W., Atlanta, Georgia, 30303-3520. It is subject to an action under the ADA, Rehabilitation Act, and FMLA and can be served with summons and

complaint upon its Registered Agent, Department of Law, at Suite 5000 at the City Hall address.

## JURISDICTION AND VENUE

5.

The claims brought in this lawsuit present federal questions and jurisdiction in this Court are proper under 28 U.S.C. §§'s 1331, 1337, and 1343.

6.

Venue of this suit is proper in the Northern District of Georgia, Atlanta Division under 28 U.S.C. § 1391. The alleged unlawful acts against Plaintiff occurred in this judicial district and division. In addition, Defendants operate in this judicial district and division.

7.

Plaintiff filed two separate charges against both Defendants with the Equal Employment Opportunity Commission on November 16, 2017. The EEOC mailed him a Notice of Right to Sue on the EEOC Charge filed against CMC on or about February 7, 2018 and on the EEOC Charge filed against the City of Atlanta on February 21, 2018.

## FACTUAL ALLEGATIONS

### 8.

Defendant CMC hired Plaintiff as a Computer Operator I (information technology specialist) on or about April 8, 2015.

### 9.

Plaintiff had been in the computer industry for over 35 years, including his military service.

### 10.

CMC had a contract to provide technology services to the City and assigned Plaintiff to work for the City.

### 11.

CMC paid Plaintiff's wages and benefits, but he performed his assignment at City Hall working under City supervisors. These supervisors had authority to fire Plaintiff and other employees and assigned him all of his work, including scheduling his shifts and hours.

### 12.

Under the FMLA statute and regulations, Defendant CMC was the primary employer and the City of Atlanta was the secondary employer as joint employers of Plaintiff.

13.

Plaintiff suffered an ACL and two MCL tears during a fall on July 16, 2015.

14.

Plaintiff was treated at an emergency room, and the doctor stated that he should be off work until July 27, 2015. Three of his days off were his normal days off.

15.

Plaintiff returned to work on July 27, 2015.

16.

The ACL/MCL injuries effected the Plaintiff in the major life activities of walking and standing.

17.

Plaintiff is a Veteran and due to backlogs in treatment availability at the Veterans Affairs Hospital, he had to wait until the VA scheduled his surgery.

18.

Plaintiff informed his supervisors of his injury and that surgery would be scheduled as soon as the VA had space.

19.

In approximately March 2016, the VA notified Plaintiff that his surgery was scheduled for June 22, 2016.

20.

He informed his supervisor with the City, Kathy Bullard, and CMC Human Resources Director, Gilliani Rivera, of the time of the surgery and then reminded them several times from March through June.

21.

During November 2015, Plaintiff filled in for a full-time City of Atlanta employee while he was undergoing medical treatment.

22.

In February 2016, that same employee passed away.

23.

Soon after he died, but before Plaintiff informed Bullard of his scheduled surgery, Bullard asked Plaintiff if he was interested in his position and Plaintiff replied that he was.

24.

The position was not posted, however, until April 2016. A supervisor, Terry Bryson informed Plaintiff of the posting.

25,

Plaintiff applied for the position online.

26.

When Plaintiff inquired about the position, Bullard told him that Human Resources did not receive his application.

27.

When Plaintiff informed Bryson of Bullard's response, he instructed Plaintiff to apply again online, print out the documentation confirming the application, and slide it under Bullard's door. Plaintiff did so.

28.

On the next day, Plaintiff asked Bullard if she received his application, but she replied that she could not hire him because Human Resources did not receive the application.

29.

Instead, she assigned April Elmore to that shift position.

30.

Upon information and belief, Elmore did not have a serious medical condition, disability, or a leave request for a pending surgery.

31.

On or about April 8, 2016, Plaintiff became eligible for FMLA leave because he had: been employed for twelve months; worked over 1250 hours during those twelve months; and either Defendant CMC employed more than 50 employees within a 75-mile radius from where Plaintiff worked because of its joint employer relationship with the City, or because it was a joint employer with the City (which is not subject to the 50 employee threshold).

32.

When Plaintiff reminded Bullard of his surgery on June 22, 2016, she instructed him to train Ray Wade off the first shift so that he would be able to perform Plaintiff's duties.

33.

Bullard discussed that when Plaintiff returned, he might be moved from to a third shift schedule from 11:00 p.m. to 7:00 a.m. from Tuesday through Saturday.

34.

Despite informing his supervisors that he was seeking leave to take care of a serious medical condition, neither Defendant met its obligation to inform Plaintiff of his FMLA rights to take leave. Defendant did not

designate any of Plaintiff's leave for treatment as FMLA protected, or notify him that it had not been designated as FMLA leave. Neither Defendant provided Plaintiff with FMLA papers requesting information from his medical treatment provider.

35.

Plaintiff asked CMC's Rivera if he needed to fill out any forms for his medical leave, and she informed him that she would document his leave and that his job would be waiting on him when he returned.

36.

Plaintiff last worked on June 20, 2016.

37.

Plaintiff had the knee surgery on June 22, 2016.

38.

Plaintiff contacted his employers during his leave to give them updates, including by email. Bullard would never respond.

39.

On July 7, 2016, Plaintiff provided Defendants notice that his medical provider had informed him that he should be able to work on August 15, 2016.

40.

During his leave, CMC provided the City with another Computer Operator I to work in Plaintiff's assignment to the City of Atlanta.

41.

CMC notified the City that this employee should be informed that this would be a short-term assignment pending Plaintiff's return.

42.

On or about August 11, 2016, Plaintiff's medical treatment provider provided him with a document releasing him to work beginning August 15, 2016. He sent that document to Rivera and hand delivered it to Bullard at City Hall to ask when he could return to work.

43.

Bullard informed Plaintiff that he still had his job and that supervisor Terry Bryson would contact him when he was scheduled for a shift.

44.

Plaintiff asked Bullard if he was going to be moved to the third shift schedule they had discussed before his leave began.

45.

Because he was nervous that he was not just scheduled for the new shift beginning August 15, 2016, Plaintiff called Bullard again when he returned to his house. Bullard again responded that Plaintiff still had his job.

46.

When no one contacted him, Plaintiff called and emailed Bullard and Rivera seeking information on when he should report to work, but they did not respond.

47.

When Defendants did not respond, on August 18, 2016, Plaintiff filed for unemployment benefits with the Georgia Department of Labor because he was without any income or assigned work. Except for one week, Plaintiff's leave was unpaid.

48.

In written position statement filed with the EEOC, CMC alleges that the City of Atlanta informed CMC that it wanted to keep Plaintiff's temporary replacement instead.

49.

CMC did not inform the City of its obligations under the FMLA to place Plaintiff in the same or similar position, or to honor his request for just eight weeks leave as a reasonable accommodation.

50.

After Plaintiff applied for unemployment benefits, on August 29, 2016, Defendants finally contacted Plaintiff and offered him a part-time back up contractor position, but he would only be able to work holidays, vacations, and an as needed basis.

51.

Despite this not being a full-time position, Plaintiff notified Defendants that he would work any hours assigned and asked when he would be scheduled.

52.

Defendants did not respond to Plaintiff's acceptance email.

53.

The first holiday after this email was Labor Day, September 5, 2016.

54.

On September 2, 2016, Anita LNU from CMC contacted Plaintiff and informed him that Bullard had decided to keep the schedule as it was. She asked Plaintiff is he would be available to work only holidays. Plaintiff told her that he had already answered that he would in his email to Rivera. She stated that she would look for that email.

55.

Defendants never contacted Plaintiff to report to work.

56.

Plaintiff attempted to call CMC and the City, but they never returned his calls.

57.

Even though CMC knew Plaintiff had not been offered full-time employment and that it had never scheduled him to work, CMC attempted to disqualify Plaintiff from receiving unemployment benefits because it claimed Plaintiff did not lose his position.

58.

Defendant's discriminatory and retaliatory acts have caused Plaintiff emotional distress and financial hardship.

## COUNT ONE
## DISCRIMINATION UNDER THE ADA

59.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

60.

Plaintiff's injury to his knee is a physical impairment that substantially limited him in the major life activities of walking and standing.

61.

By refusing to allow Plaintiff to obtain a permanent position with the City of Atlanta, the City violated the ADA.

62.

By terminating Plaintiff by not offering him any scheduled work after he sought to return from eight weeks leave, Defendants violated the ADA.

63.

As a result of Defendants' discriminatory acts, Plaintiff is entitled to recover the relief requested below.

## COUNT TWO
## FAILURE TO ACCOMMODATE UNDER THE ADA

64.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

65.

Defendants violated the ADA by failing to grant Plaintiff a reasonable accommodation to take eight weeks to take care of his disability.

66.

Defendants cannot show that it would have been an undue burden to allow Plaintiff to take this leave and place him back in his position or another similar position.

67.

Rather than accommodate Plaintiff by allowing this leave, Defendants terminated Plaintiff.

68.

As a result of Defendants' failure to accommodate, Plaintiff is entitled to recover the relief requested below.

## COUNT THREE
## RETALIATION UNDER THE ADA

### 69.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

### 70.

Plaintiff sought a promotion to a full-time position with the City of Atlanta after he had notified Defendants of his need for surgery on June 22, 2016.

### 71.

The City denied him this position and promoted another employee without a disability or a need for leave instead.

### 72.

Plaintiff sought an accommodation for his disability by requesting leave for his surgery.

### 73.

By not promoting Plaintiff and in terminating him, Defendants retaliated against Plaintiff for engaging in protected activity.

74.

As a result of Defendants' retaliation, Plaintiff is entitled to recover the relief requested below.

## COUNT FOUR
## DISCRIMINATION UNDER THE REHABILITATION ACT

75.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

76.

The City of Atlanta receives federal funds from the federal government.

77.

Plaintiff's injury to his knee is a physical impairment that substantially limited him in the major life activities of walking and standing.

78.

By refusing to allow Plaintiff to obtain a permanent position with the City of Atlanta, the City violated the Rehabilitation Act.

79.

By terminating Plaintiff by not offering him any scheduled work after he sought to return from eight weeks leave, the City violated the Rehabilitation Act.

80.

As a result of Defendant City's discriminatory acts, Plaintiff is entitled to recover the relief requested below.

**COUNT FIVE**
**FAILURE TO ACCOMMODATE UNDER THE REHABILITATION ACT**

81.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

82.

Defendant City violated the Rehabilitation Act by failing to grant Plaintiff a reasonable accommodation to take eight weeks to take care of his disability.

83.

Defendant cannot show that it would have been an undue burden to allow Plaintiff to take this leave and place him back in his position or another similar position.

84.

Rather than accommodate Plaintiff by allowing this leave, Defendant City terminated Plaintiff.

85.

As a result of Defendant City's failure to accommodate, Plaintiff is entitled to recover the relief requested below.

## COUNT SIX
## RETALIATION UNDER THE REHABILITATION ACT

86.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

87.

Plaintiff sought a promotion to a full-time position with the City of Atlanta after he had notified Defendants of his need for surgery on June 22, 2016.

88.

The City denied him this position and promoted another employee without a disability or a need for leave instead.

89.

Plaintiff sought an accommodation for his disability by requesting leave for his surgery.

90.

By not promoting Plaintiff and in terminating him, Defendant City retaliated against Plaintiff for engaging in protected activity.

91.

As a result of Defendant City's retaliation, Plaintiff is entitled to recover the relief requested below.

**COUNT SEVEN**
**INTERFERENCE WITH FMLA RIGHTS**

92.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

93.

Defendants replaced Plaintiff while he was undergoing treatment for a serious medical condition of which it was aware.

94.

Rather than reinstate Plaintiff to his position, or an alternative similar position, Defendants terminated Plaintiff. Each Defendant was motivated by an intent to interfere with his FMLA rights.

95.

Defendants did not meet their obligation to inform Plaintiff of his FMLA rights once he requested leave for a serious medical condition.

96.

Defendants did not meet their obligation to designate any of Plaintiff's leave as protected under the FMLA.

97.

As a result of Defendants' interference with Plaintiff's FMLA leave, Plaintiff is entitled to recover the relief requested below.

## COUNT EIGHT
## RETALIATION UNDER THE FMLA

### 98.

Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

### 99.

Defendant City failed to place Plaintiff in a full-time position he applied for shortly after he engaged in the protected activity of notifying it of a need for leave for surgery for a serious medical condition.

### 100.

Defendants replaced Plaintiff while he was undergoing treatment for a serious medical condition of which it was aware and then terminated him by failing to return him to that position or another similar position.

### 101.

By seeking and taking leave for his medical condition, Plaintiff engaged in protected activity under the FMLA.

### 102.

Defendant's discharge of Plaintiff was motivated by an intent to retaliate against him for taking and seeking leave for his serious medical condition.

103.

As a result of Defendants' retaliation against Plaintiff for seeking and taking leave protected by the FMLA, he is entitled to recover the relief requested below.

WHEREFORE, Plaintiff prays:

a.     That Summons issue requiring Defendants to answer the Complaint within the time provided by law;

b.     That Plaintiff be awarded a declaratory judgment that Defendants violated the ADA, the Rehabilitation Act (City only), and FMLA;

c.     That Plaintiff recover from Defendants back pay and benefits with pre-judgment interest;

d.     That Plaintiff recover liquidated damages against Defendants;

e.     That Plaintiff recover compensatory damages against Defendants in an amount to be determined by a jury;

f.     That Plaintiff recover punitive damages against Defendants in an amount to be determined by a jury;

g.     That Plaintiff recover attorney's fees and costs of litigation under the ADA, Rehabilitation Act, and FMLA, and other applicable federal law;

h.     That the Court award Plaintiff any other or further relief as it deems

necessary and proper, or equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Respectfully submitted this 10th day of May, 2018.

T. Robert Reid, LLC

<u>s/ Tilden Robert Reid, II</u>
T. Robert Reid
Ga. Bar No. 600138

1030 Woodstock Road
Suite 3112
Roswell, Georgia  30075
Telephone (678) 743-1064
Facsimile (404) 549-4136
robreidattorney@gmail.com

Attorney for Plaintiff